Public Parking Authority of Pittsburgh et. al. *v.* City of Pittsburgh, a municipal corporation. City of Pittsburgh, Appellant.

Argued October 26, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Grace S. Harris,* Executive Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.,* City Solicitor, for appellant.

*David McNeil Olds,* with him *Joseph F. McDonough,* and *Reed, Smith, Shaw & McClay,* for appellee, May Department Stores Company.

*David L. Feigenbaum,* with him *John G. Frazer, Jr.,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for Associated Dry Goods Corporation.

*Joan P. Feldman,* with her *Richard H. Martin,* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for Parking Service Corporation.

*Louis Caplan,* with him *David S. Watson,* and *Thorp, Reed & Armstrong,* for appellee, Gimbel Brothers, Inc.

OPINION BY JUDGE CRUMLISH, JR., January 27, 1977:

The City of Pittsburgh (City) has appealed an order of the Court of Common Pleas directing it to pay interest from the date of payment on monies which were paid pursuant to a subsequently invalidated local tax ordinance. Appellees[1] are operators of public parking facilities located within the City who paid, under protest, a 20 percent business privilege tax upon their gross receipts. The payments were made during 1970, 1971 and 1972. The ordinance was then declared invalid by the Court of Common Pleas of Allegheny County[2] and we affirmed.[3] Fur-

---

[1] Appellees are: The Public Parking Authority of Pittsburgh, a municipal corporation; Associated Dry Goods Corp., a Virginia corporation and successor to Joseph Horne Co., a Pennsylvania corporation; Gimbel Brothers, Inc., a New York corporation; The May Department Stores Co., a New York corporation; and Parking Service Corporation, a Pennsylvania corporation.

[2] *City of Pittsburgh v. Public Parking Authority of Pittsburgh,* No. 689 July Term, 1972, December 29, 1972.

[3] *City of Pittsburgh v. Public Parking Authority of Pittsburgh,* 11 Pa. Commonwealth Ct. 442, 314 A.2d 887 (1974).

ther review was denied by the Pennsylvania Supreme Court and United States Supreme Court. Demand for refund of taxes has been made.

The sole issue presented in this appeal is whether the court below was correct in concluding that interest on the tax refunds should be calculated from the date the taxes were paid.

Interest payable on refunds of the tax here involved depends upon the date the City erred in retaining the tax payments. In *Cities Service Oil Co. v. Pittsburgh,* 449 Pa. 481, 297 A.2d 466 (1972), our Supreme Court drew a distinction between cases where the amount of the refund rather than the tax itself is in issue and cases where the amount of a refund is not in issue because the tax itself is invalid. The Court held that:

> In the former situation, the tax is valid and, therefore, there is not an improper detention until it is determined that the amount of the tax was incorrectly computed, requiring the lower court to establish the amount of the refund, interest accruing from the date of the lower court's decision, e.g., a real estate tax based on an incorrect property assessment. However, where a taxpayer pays a specific sum of money under protest and it is later determined that the taxing authority had no right to demand payment of this tax, then the detention was improper from the date the tax was paid, interest accruing from that date provided a demand for refund has been made.

449 Pa. at 486, 297 A.2d at 469. (Citation omitted.)

Here, we apply the second *Cities Service* test. Gross receipts taxes were paid by Appellees under protest pursuant to a local tax ordinance which was later declared invalid and all Appellees have made demands for refunds. Therefore, retention by the

City was improper from the time each tax payment was made. Under these circumstances, we must conclude that, there being no statute or public policy militating against it, *Cities Service, supra,* applies and Appellees are entitled to interest on the tax payments, to be calculated at the rate of six percent[4], from the date of payment.

Affirmed.

ORDER

AND Now, this 27th day of January, 1977, the order of the Court of Common Pleas of Allegheny County ordering refund of taxes, plus interest at six percent (6%) per annum to be calculated from the date of payment of each installment of taxes, is hereby affirmed.

---

[4] This interest rate was agreed upon between the City and Appellees and was the subject of a stipulation.

---

DISSENTING OPINION BY JUDGE BLATT:

I must dissent from the majority's award of interest running from the date of payment of the parking transaction tax here involved. I do so because "[c]ourts in charging and allowing interest need not limit themselves by hard and fast rules but should charge and allow interest in accordance with principles of equity." *Cities Service Oil Co. v. Pittsburgh,* 449 Pa. 481, 487, 297 A.2d 466, 469 (1972). It seems to me that the application of such principles here would dictate another result.

In *McGillick v. Pittsburgh,* No. 85 January Term, 1963 Misc. Docket (Allegheny County), *aff'd per curiam,* 415 Pa. 581, 203 A. 2d 480 (1964), where certain commercial parking lot operators challenged the "Parking Tax Ordinance," Ordinance No. 435 of 1963, enacted by the Pittsburgh City Council, on the ground (among others) that the tax violated the Pennsylvania

Constitution because it was not uniform upon the same class of subjects, the court said:

> The Ordinance also defines the word 'operator.' In its definition of the word, 'operator,' the Ordinance expressly excludes the City and the Public Parking Authority of the City of Pittsburgh but does include operators on the premises of the Public Parking Authority of the City of Pittsburgh. The Appellants contend that these exclusions constitute an illegal and unreasonable classification of subjects of taxation and that in this respect the Parking Tax Ordinance violates Section (1) of Article (9) of the Pennsylvania Constitution. Said Article reads as follows:

> All taxes shall be uniform upon the same class of subjects within the territorial limits of the Authority levying the tax and shall be levied and collected under the general laws.

> These exclusions represent a classification of subjects of the parking tax.

> . . . .

> By its definition of the word 'operator,' the Parking Tax Ordinance excludes from the parking tax the City itself and the Public Parking Authority of the City of Pittsburgh but not the operators on the premises of the Public Parking Authority of the City of Pittsburgh. This means that the City itself is exempt from the tax and that such parking operations as are conducted directly by the Public Parking Authority of the City of Pittsburgh are also exempt from the tax. Those parking operations which are conducted by concessionaires or lessees of the Public Parking Authority of the City of Pittsburgh are subject to the tax under the terms of the Parking Tax Ordinance.

> . . . .

We are of the opinion that the flat exemption of the Pittsburgh Public Parking Authority as an operator of parking lots does not comply with Section (1) or [sic] Article (9) of the Pennsylvania Constitution requiring uniformity of taxes upon the same class of subjects. . . . Our holding is that a blanket exclusion of the Pittsburgh Public Parking Authority as an 'operator' does not conform to the uniformity requirements of the Pennsylvania Constitution. Under the present factual situation this ruling affects only 348 metered parking spaces which are operated directly by the Pittsburgh Public Parking Authority. It should be noted that the Parking Authority Law provides that 'any property' acquired or used by the Authority for its purposes is exempt from any taxes. We are of the opinion that this does not exempt taxes upon parking transactions which under this Ordinance are in the nature of excise taxes as contrasted to property taxes. In view of the severance clause in the Ordinance our holding with respect to the Pittsburgh Public Parking Authority's non taxed operations in no way invalidates the whole Ordinance.

. . . .

Sor [sic] the reasons set forth hereinabove, we find that the Pittsburgh Parking Tax Ordinance No. 434 of 1962 is valid with the exception of that part of Section (2) dealing with definitions which exclude the Pittsburgh Public Parking Authority of the City of Pittsburgh from the definition of the term 'operator.' (Citations omitted.)

It had, therefore, been clearly held that the parking transaction tax was valid and that it applied to the Public Parking Authority. Thereafter, the city, in

response to this decision, imposed a parking transaction tax upon commercial parking lot operators and upon the Public Parking Authority as well.

In *Pittsburgh v. Public Parking Authority*, 11 Pa. Commonwealth Ct. 442, 314 A.2d 887 (1974), our Court was presented with the issue of whether or not the Public Parking Authority, and its lessee-operators were exempted by statute from the payment of the parking transaction tax. We distinguished *McGillick, supra,* and held, in affirming the lower court, that the parking facilities operated by the Public Parking Authority and its lessee-operators were "public properties devoted to public use and entitled to exemption from real estate taxation." 11 Pa. Commonwealth Ct. at 445, 314 A.2d at 889.

While I do not challenge our holding in *Pittsburgh v. Public Parking Authority, supra,* it seems clear to me that the city was justified in relying on *McGillick, supra,* when it collected this tax from the Parking Authority and its lessees and I believe, therefore, that equitable principles dictate that the city pay interest on all refunds due under *Pittsburgh v. Public Parking Authority, supra,* only from the date of the decision in that case.